IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSIE WILLIAMS,<br><br>      Plaintiff,<br><br>v.<br><br>DAVID MITCHELL, LATOYA HUGHES, ROB JEFFREYS, and CHAPLAIN RICHARD ARNOLD,<br><br>      Defendants. | Case No. 24-cv-1257-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Jessie Williams, an inmate of the Illinois Department of Corrections who is currently incarcerated at Illinois River Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center.[1] This matter is now before the Court on a motion for summary judgment filed by Defendants David Mitchell, Rob Jeffreys,[2] Latoya Hughes, and Richard Arnold (Doc. 10). Defendants argue that Williams failed to exhaust his administrative remedies prior to filing his original lawsuit. Williams filed a response in opposition to the motion (Doc. 13).

---

[1] Plaintiff Williams was originally a joint plaintiff in *Love v. Mitchell, et al.*, Case No. 22-cv-2340-NJR. After Williams transferred to Illinois River, however, it was difficult for Plaintiffs Love and Williams to coordinate the litigation of their claims and jointly respond to pleadings (Doc. 1). Thus, Williams's claims were severed into a new case.

[2] Defendant Rob Jeffreys was inadvertently terminated from the docket when Latoya Hughes was substituted in his place as the proper defendant for Count 2. Rob Jeffreys is still a defendant, in his individual capacity, for the claims in Count 1.

## BACKGROUND

Williams's Complaint alleged violations of his religious liberties pursuant to the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Specifically, Williams alleged that he was a practicing Muslim who sought to participate in Ramadan from April 1, 2022, thru April 30, 2022 (Doc. 7, p. 2). The observation of Ramadan requires Muslims to abstain from food and drink from sunrise to sunset and to break their fast with dates and water prior to evening prayers (*Id.*). To participate in Ramadan, Williams contacted Chaplain Richard Arnold and requested participation in the fast as directed by the prison on the institutional channel at Pinckneyville (*Id.*). At the beginning of Ramadan, Williams was allowed to participate in the fast, but the dinner trays were not delivered at the appropriate time prior to sunset to allow participating prisoners to break their fast at the prescribed time (*Id.*). Because Williams did not receive his meal at the prescribed time, he was forced to break his fast with his own food (*Id.*).

In addition to the issues with the food trays, Williams was also denied the ability to participate in other aspects of the holiday (*Id.* at p. 3). Williams only received meals in his cell, and there were no instructions about exceptions or repercussions for those inmates who broke their fast early (*Id.*). Williams was not allowed to participate in congregational prayers except during the normal scheduled service, and he was not allowed to participate in the feast at the end of Ramadan (*Id.*).

After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Williams was allowed to proceed on the following counts:

2

      Count 1:     First Amendment claim against David Mitchell, Richard Arnold, and Rob Jeffreys for substantially burdening Williams's practice of religion during the month of Ramadan.

      Count 2:     RULIPA claim against Latoya Hughes for substantially burdening Williams's practice of religion during the month of Ramadan.

(Doc. 7, p. 3).

The parties concede that only one grievance is relevant to Williams's claims.

**April 21, 2022 Grievance (Grievance # 1191-04-22)**:

On April 21, 2022, Williams submitted a grievance for religious discrimination (Doc. 10, p. 22). Williams complained that outside of the television memo at the start of Ramadan, he failed to receive any additional information about the rules, feeding schedule, activities, and expectations of inmates regarding their participation in Ramadan (*Id.*). He also complained that he did not know who to contact with his questions or concerns about the fast or other activities (*Id.* at pp. 22-23). Williams complained that he received evening meal trays at 9:00 p.m. despite the trays being delivered by dietary at 7:20 p.m. (*Id.* at p. 23). As a result of the delay in receiving his trays, Williams complained that he suffered from stomach cramps, lightheadedness, and headaches (*Id.*). Williams stated his belief that information was not provided to inmates in order to protect staff from being held liable for constitutional violations. Williams also noted that all Muslims face constitutional violations from "Islamophobes" employed at Pinckneyville and that violations increase during Ramadan.

On May 25, 2022, the counselor reviewed the grievance (*Id.* at p. 22). The counselor noted that per Chaplain Arnold, Williams attended chapel and helped with prayer services. He had access to the chaplain, and Arnold noted that he had many conversations with Williams about Ramadan and his participation in the fast. The prison dietary also noted that trays were delivered to the cellhouse at 7:45 p.m. and were delivered to inmates after sunset (*Id.* at p. 22). For instance, sunset was at 7:46 p.m. on April 1, 2022, but sunset was at 8:14 p.m. on April 30, 2022 (*Id.*). The counselor noted that staff followed the rules of Ramadan and there was no discrimination (*Id.*).

On June 1, 2022, the grievance was reviewed by the grievance officer (*Id.* at p. 20). Again, Chaplain Arnold was consulted and noted that accommodations are made for Muslims to participate in Ramadan every year (*Id.*). Any questions regarding religious matters were to be directed to

3

the chaplain. He also noted that all of the information given to inmates about Ramadan was displayed on inmates' televisions (*Id*.). Arnold noted that he spoke to Williams about his participation in Ramadan. He also noted that Williams attended chapel and helped lead the prayer service (*Id*.). The grievance officer also consulted dietary who noted that dinner trays are delivered to the cellhouse at approximately 7:50 p.m. (*Id*.). Based on a review of video footage from the cellhouse, trays arrived at the cellhouse between 7:15 and 8:00 p.m. and were delivered to inmates between 8:30 and 9:00 p.m. (*Id*. at p. 21). In light of the responses, the grievance officer recommended that Williams's grievance be denied (*Id*. at p. 20). On July 15, 2022, the Chief Administrative Officer ("CAO") concurred with the findings (*Id*.).

On July 20, 2022, Williams appealed the grievance to the Administrative Review Board ("ARB") (*Id*.). The ARB received the grievance on July 27, 2022, and reviewed the grievance on August 3, 2022 (*Id*. at p. 19). The ARB noted that Williams's grievance complained about the Ramadan feast serving time and lack of information given to inmates about participation in Ramadan (*Id*.). The ARB denied the grievance because they found it was appropriately handled by the facility (*Id*.).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that

"[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the

> district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Williams was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

6

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified

7

in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material facts, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Defendants argue that Williams failed to properly identify them in his grievance dated April 21, 2022. Although exhaustion is not intended to provide individual notice to each prison official who might later be sued, it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. The Illinois Administrative Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code §504.810(c). An inmate does not have to specifically identify the individual by name, but he must include as much descriptive information as possible. *Id*.

Williams's grievance provided sufficient information for grievance officials to address his complaints about the timeliness of his dinner trays during the month of

8

Ramadan. He specifically complains about the delays in receiving the trays. Defendants are correct that the grievance does not specifically identify anyone associated with those complaints, but Williams states in his grievance that he does not know who to contact about issues with his participation in Ramadan. Even without identifying a specific individual, the counselor and grievance officer were able to respond to Williams's grievance and rule on the merits of his complaints. Specifically, both the counselor and grievance officer sought Chaplain Arnold's response for the grievance, noting that "any questions regarding religious matters should be addressed to the facility chaplain" (Doc. 10, p. 20). The ARB also noted that the grievance was about Ramadan feast serving times and the lack of information regarding the participation in Ramadan (*Id.* at p. 2). Thus, the grievance served its purpose of allowing officials to investigate Williams's claims about timely meal trays. *See Maddox*, 655 F.3d at 722 ("[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action."). Officials were also able to identify Chaplain Arnold as the official in charge of those determinations and question him in response to the grievance. Thus, Williams's grievance served to exhaust his claims against Chaplain Arnold as it relates to Williams's receipt of dinner trays during Ramadan. His grievance also served to exhaust his claim in Count 2 for the same violation pursuant to RLUIPA.[3]

---

[3] Although Defendants argue that the grievance failed to identify Hughes by name, Director Hughes is only in the case in her official capacity. She was added to the case, in her official

Williams's grievance failed, however, to identify Warden David Mitchell or Director Rob Jeffreys. The grievance form directs an inmate to include a description of what happened including "the name or identifying information for each person involved." (Doc. 55-2, p. 5). *See also* 20 Ill. Admin. Code § 504.810(c). Although an inmate is not required to specifically name a potential defendant, he "must provide some identifying information about the accused individuals" and "enough information about who caused the grieved of problem so that a prison can properly investigate and resolve [the grievance]." *Jackson v. Esser*, 105 F. 4th 948, 960 (7th Cir. 2024). Williams's grievance is labeled as complaining about religious discrimination, and the grievance complains about "Islamophobes" at Pinckneyville, but Williams fails to identify any officials or staff that he believes were involved in the alleged discrimination (Doc. 10, pp. 22-23). He does not refer to Mitchell or Jeffreys by name, nor does he refer to any actions attributed to the warden or director. There is simply nothing in the grievance that would give officials "a fair opportunity to address" any complaints about the warden or director. *See King v. Dart*, 63 F. 4th 602, 608 (7th Cir. 2023). Thus, the grievance fails to exhaust the claims against David Mitchell and Rob Jeffreys.

Williams's grievance also does not serve to exhaust his claims regarding participation in congregational prayers and the feast at the end of Ramadan. Williams argues that he was not required to "file multiple, successive grievances raising the same

---

capacity as director of IDOC, as the proper defendant for injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

10

issue." *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, the Seventh Circuit found that the inmate's grievance "centered around continuing prison policies, including allegedly illegal lockdowns, and one occurrence of notice from [the prisoner] was sufficient to give the prison a chance to correct the problems." *Id*. But the Seventh Circuit noted that an inmate is required to file a separate grievance "if the underlying facts or the complaints are different." *Id*. For instance, in *Bowers v. Dart*, 1 F.4th 513, 517-18 (7th Cir. 2021), the Seventh Circuit found that a grievance complaining about officers' failure to respond *during* an attack did not serve to exhaust the claim that officers failed to protect the plaintiff *before* the attack. The Seventh Circuit noted that claims in the grievance were "substantively distinct from the allegations in [the plaintiff's] federal complaint." *Id*. at 517.

More recently, the Seventh Circuit found that a grievance about the lack of water in an observation cell did not serve to exhaust claims about other issues with the same cell, including the presence of feces and chemical agents, because those claims were substantively distinct from the claims in the grievance. *Jackson*, 105 F. 4th at 959-61.

In this case, Williams's claim in his grievance, that he was denied timely dietary trays to break his fast, is substantively different from his claims regarding his participation in additional prayer services and the feast at the end of Ramadan. Although Williams's grievance alleges that he failed to receive adequate information regarding potential activities during Ramadan, his grievance does not allege that he was being denied access to additional prayer services or the feast. The participation in prayers and the feast is factually different from his access to meal trays. Thus, his grievance regarding

11

the distribution of dietary trays could not serve to exhaust his claims that he was later denied participation in congregational prayers and the feast ending Ramadan. *See Jackson*, 105 F. 4th at 959 (The plaintiff failed to exhaust claims regarding the presence of chemical agents in his cell when the plaintiff's grievance only mentioned the use of chemical agents and failed to include the presence of chemicals in the cell as the "nature of the wrong."). Thus, Williams failed to exhaust his administrative remedies as to his claims regarding participation in prayers and the feast at the end of Ramadan.

Finally, the Court notes that Williams seeks sanctions against Defendants for allegedly violating Federal Rule of Civil Procedure 11. Williams argues that Defendants filed their motion in bad faith, that there was no basis for their arguments regarding exhaustion, and that they only sought to distract the Court with "irrelevant ancillary issues" (Doc. 62, pp. 10-13). Contrary to Williams's arguments, Defendants presented nonfrivolous arguments regarding Williams's exhaustion of his administrative remedies and demonstrated that Williams failed to exhaust as to some of his claims. Further, nothing in the record suggests that Defendants only sought to distract the Court. Because there is simply no basis for Williams's contention that Defendants acted in bad faith, his request for sanctions is **DENIED**.

CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 10) is **GRANTED in part and DENIED in part**. Defendants David Mitchell and Rob Jeffreys are **GRANTED** summary judgment, and all Defendants are **GRANTED** summary judgment as to Williams's claims regarding participation in prayers and the feast at the

end of Ramadan. But Williams exhausted his claim regarding his access to dietary trays against Richard Arnold (Count 1) and under RLUIPA (Count 2) and, thus, summary judgment is **DENIED** as to those two claims.

The Clerk of Court is **DIRECTED** to enter judgment accordingly at the end of the case.

**IT IS SO ORDERED.**

DATED:  September 18, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**