**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JESSIE WILLIAMS,

        Plaintiff,

v.

        Case No. 3:24-CV-1257-NJR

LATOYA HUGHES and
RICHARD ARNOLD,

        Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jessie Williams, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Illinois River Correctional Center, brings this action for deprivations of his constitutional and statutory rights to religious exercise while at Pinckneyville Correctional Center.[1] According to Williams, Pinckneyville's administration of Ramadan in 2022 violated his rights under the free exercise clause of the First Amendment,[2] U.S. CONST. amend. I, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5. This matter is now before the Court on a motion for summary judgment filed by Defendants Latoya Hughes and Richard Arnold. (Doc. 26). Defendants argue there is no dispute of material

---

[1] Plaintiff Williams was originally a joint plaintiff in *Love v. Mitchell, et al.*, Case No. 22-cv-2340-NJR. After Williams was transferred to Illinois River, however, it was difficult for Williams and his fellow plaintiff to coordinate the litigation of their claims and jointly respond to pleadings. (Doc. 1). Thus, Williams's claims were severed into a new case.

[2] As applicable to the States by operation of the Fourteenth Amendment. U.S. CONST. amend. XIV; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

fact on either of Williams's claims and that, in any event, his RLUIPA claim is moot. Williams did not file a response to the motion.[3] For the reasons set forth below, the Court grants summary judgment to Defendants.

### BACKGROUND[4]

Jessie Williams has been a practicing Muslim for the past twenty years. (Doc. 26, ¶ 2; Doc. 26-1, at 6–7). As part of his faith, he is required to observe Ramadan, an Islamic holy month. (Doc. 26-1, at 7). From new moon to new moon, Williams must practice a form of abstinence that lasts from sun-up to sundown. *Id.* Between those times, Williams must abstain from sex. *Id.* He must abstain from foul language. *Id.* He must abstain from doing anything of bad character. *Id.* And, most pertinent here, he must abstain from eating or drinking. *Id.* The abstinence ends only when the sun leaves the sky. *Id.* Williams then has a window of time during which he must break his fast with any food or water. (Doc. 26, ¶ 4–5; Doc. 26-1, at 7, 9).

In 2022, Ramadan took place from April 1 to April 30. (Doc. 26, ¶ 3). At that time, Williams was incarcerated at Pinckneyville Correctional Facility.[5] *Id.* ¶ 1. That April,

---

[3] Williams's response was initially due on December 17, 2025. *See* SDIL-LR 7.1(b)(1)(A). Three months after that deadline, the Court ordered Williams to show cause, by April 20, 2026, why the motion for summary judgment should not be considered unopposed. (Doc. 28). Alternatively, Williams was permitted to file a response to Defendants' motion by that same date. *Id.* Despite that order, Williams still did not respond. In fact, in the more than six months' time since Defendants originally moved for summary judgment, Williams has not made a single filing.

[4] Because Williams failed to respond to Defendants' Statement of Material Facts, all facts therein are undisputed pursuant to the Local Rules governing summary judgment. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."); *see also* FED. R. CIV. P. 56(e) (permitting courts on summary judgment to consider facts improperly addressed by an opposing party as undisputed).

[5] Williams has since been transferred from Pinckneyville to Illinois River Correctional Center. (Doc. 26, ¶ 1; Doc. 26-1, at 4; Doc. 26-2, at 1).

Pinckneyville was under an administrative quarantine, so the Ramadan meals were taken in observants' cells. *Id.* ¶¶ 6–7. Each evening, dietary staff would prepare meal trays for Ramadan participants, which would then be delivered to the cell house. *Id.* ¶ 13. Cell house staff were then responsible for delivering the trays directly to observants' cells. *Id.*

The gravamen of Williams's complaint is that during Ramadan 2022, the meal trays were not delivered to his cell until well after sundown each day, which occurred between 7:45 and 8:14 p.m. (Doc. 26, ¶¶ 11–12, 15–16). Although trays were delivered from dietary on time each day, *id.* ¶ 12, cell house staff did not pass them out until after 9:30 p.m. (Doc. 26-1, at 8–9; Doc. 26, ¶¶ 15–16). Williams had his own food and water (*see* Doc. 26, ¶ 17; Doc. 26-1, at 9), but he felt that the prison was obliged to make sure his trays arrived on time (Doc. 26-1, at 8–9).

Although Williams's complaint originally named a larger set of defendants, a number were dismissed after the complaint was screened pursuant to 28 U.S.C. § 1915A. (Doc. 7). More were dismissed after the Court granted in part a motion for summary judgment on the issue of exhaustion. (Doc. 14). Remaining in this suit are Defendant Richard Arnold, then the Pinckneyville Chaplain,[6] and Defendant Latoya Hughes, the Director of IDOC.[7] Williams asserts that Arnold, through his role in coordinating a list of inmates participating in Ramadan (Doc. 26-3, ¶¶ 3–5), deprived him of his First Amendment rights. (Docs. 7, 14). The claim against Arnold, labeled Count I, is brought

---

[6] Arnold is now the Chaplain at Centralia Correctional Center. (Doc. 26-3, ¶ 1).

[7] Hughes, who is sued only in her official capacity, was substituted for the previous IDOC Director, Rob Jeffreys. (*See* Doc. 14, at 9 n.3; Doc. 8, at 1 n.1).

under 42 U.S.C. § 1983. (Docs. 7, 14). Williams also asserts a RLUIPA challenge, labeled Count II, for whom the only proper defendant is Hughes. (Docs. 7, 14).

Williams seeks three primary forms of relief: declaratory, injunctive, and monetary (in the form of compensatory and punitive damages). (Doc. 2, ¶¶ 58–62). Specifically, he wants (1) a declaration that the challenged conduct violated his rights; (2) an injunction "ordering Defendants to create a comprehensive plan regarding the policies, procedures, rules, regulations, and activities that will be acceptable/followed during the month of Ramadan at all IDOC facilities"; and (3) $820,000. *Id.*

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of a suit under the relevant substantive law. *Ruffin-Thompkins*, 422 F.3d at 607.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*,

634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). But "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160–61 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party, who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322–24.

Where, as here, the nonmovant "fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [is] proper given the undisputed facts'" viewed in the light most favorable to the non-moving party. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)). But the Court is entitled, as it has done here, to consider the moving party's assertions of fact as undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2).

A moving party is entitled to judgment as a matter of law where the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect

to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. The party opposing

summary judgment must offer admissible evidence in support of his or her version of

events; hearsay evidence does not create a genuine issue of material fact and cannot be

considered on summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009);

*see also Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023).

## DISCUSSION

### A. Subject matter jurisdiction

Before proceeding to the merits, the Court has a duty to assure itself of its subject

matter jurisdiction. *E.g.*, *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 663–64 (7th Cir. 2021).

Defendants assert that, because Williams has been transferred out of Pinckneyville, his

claim for injunctive relief under RLUIPA (Count II) has become moot. (Doc. 26, at 11).

But the Court has found a broader jurisdictional defect. For the reasons explained below,

Williams's claim for injunctive relief under § 1983 and for injunctive and declaratory

relief under RLIUPA must be dismissed as moot.

"A court's power to grant injunctive relief only survives if such relief is actually

needed." *Nelson v. Miller*, 570 F.3d 868, 882–83 (7th Cir. 2009), *abrogated on other grounds*

*by*, *Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019), *as recognized in*, *Bey v. Haines*, 802 F. App'x

194, 200 (7th Cir. 2020). Injunctive relief is not necessary where there does not "exist[]

some cognizable danger of recurrent violation, something more than the mere

possibility." *Id.* (quoting *United States v. W.T. Grant. Co.*, 345 U.S. 629, 633 (1953)). "[T]here

must be a 'real and immediate' threat of future injury"; the existence of a violation in the

past, on its own, is not enough. *Generations at Rock Island, LLC v. Ill. Dep't of Pub. Health*,

712 F. Supp. 3d 1071, 1076 (N.D. Ill. 2024) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *see also Young v. Lane*, 922 F.2d 370, 373–74 (7th Cir. 1991). Where the threat of future injury ceases to exist after a case is filed and "there is no longer any ongoing wrongdoing to remedy," the case becomes "moot." *Aslin v. Fin. Indus. Regul. Auth., Inc.*, 704 F.3d 475, 477–78 (7th Cir. 2013). Moot cases and claims do not present justiciable controversies; accordingly, federal courts must dismiss moot cases and claims for lack of subject matter jurisdiction. *E.g.*, *id.*

In the prison context, requests for injunctive relief can be sorted into two categories: those seeking a remedy for a "condition specific to a particular prison," and those seeking a remedy for a condition "stem[ming] from a system-wide policy." *Lehn v. Holmes*, 364 F.3d 862, 871–72 (7th Cir. 2004). When a prisoner seeking the former is transferred between prisons, his claim for injunctive relief typically becomes moot: he is no longer subject to the challenged condition, so he no longer needs the injunction. *Id.* (citing *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995)); *see also Maddox v. Love*, 655 F.3d 709, 716–17 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009). Conversely, if a prisoner is challenging a condition that stems from a system-wide policy, transferring him between prisons in the same system does not moot his claim. *Id.* If the policy applies at both prisons, an injunction may still be necessary to rectify ongoing and future harm.

Williams's claim for injunctive relief is best understood as challenging a prison-specific condition. Williams does not allege that the challenged policy existed anywhere besides Pinckneyville. Nor does the record contain any evidence suggesting that Pinckneyville's 2022 Ramadan policy exists at any other IDOC facility. And since his

transfer, Williams has not filed anything with the Court suggesting that he has been subjected to similar treatment at his new facility. Because all of the allegations and evidence indicate that Williams is challenging a prison-specific policy, the Court analyzes his claim as seeking injunctive relief only as to a Pinckneyville-specific condition.

Williams's transfer moots his claim for injunctive relieve because "the transfer means that [he] no longer is laboring under the allegedly unconstitutional policy or practice." *West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015) (first citing *Maddox*, 655 F.3d at 716; and then citing *Ortiz*, 561 F.3d at 668) (explaining what was necessary for a transfer to moot a prisoner's claim for injunctive relief). Williams has not shown[8] and the record does not demonstrate "a realistic possibility" that he will be transferred back to Pinckneyville and subjected again to the challenged conditions. *Maddox*, 655 F.3d at 716; *Young*, 922 F.2d at 373–74. Any relief this Court could offer Williams would thus be "purely speculative in nature." *Ortiz*, 561 F.3d at 668 (citing *Preiser v. Newkirk*, 422 U.S. 395, 401–04 (1975)). Accordingly, the Court lacks jurisdiction to hear Williams's moot claim for injunctive relief.

While Williams has not responded to the instant motion for summary judgment, one could imagine counterarguments to this Court's conclusion. For instance, he could argue that his claim for injunctive relief is not moot because he is challenging a condition

---

[8] In *Young v. Lane*, plaintiffs seeking injunctive relief were transferred from the prison where the challenged conduct had occurred. 922 F.3d 370. The Seventh Circuit held that the transfer very likely had mooted the request for injunctive relief and remanded the case because the transfer had occurred after the trial; plaintiffs had not yet "been given the opportunity" to make the "only" factual showing that could have saved their injunctive relief: a showing "that one of the plaintiffs is likely to be retransferred'" back to their original prison. *Id.* at 373–74. Here, Williams was given the opportunity to make such a showing: he could have responded to Defendants' motion for summary judgment. He simply chose not to do so.

stemming from an IDOC-wide policy. The explicit text of Williams's complaint seeks an injunction "ordering Defendants to create a comprehensive plan regarding the policies, procedures, rules, regulations, and activities that will be acceptable/followed during the month of Ramadan *at all IDOC facilities*." (Doc. 2, ¶ 59 (emphasis added)). Perhaps Williams might have argued that he therefore is challenging a system-wide policy rather than a policy specific to Pinckneyville.

But this hypothetical counterargument cannot bear the weight that Williams might have put on it (had he responded). First, as mentioned, all the allegations and evidence concern failures of the cell house staff at Pinckneyville to deliver the trays at sunset rather than any broader IDOC policy or lack thereof. The Court does not think a plaintiff could circumvent limitations on a court's jurisdiction to hear a request for injunctive relief simply by requesting an inappropriately broad injunction. *See Young*, 922 F.2d at 374 n.9 (where a district court was to analyze mootness on remand, a requested statewide injunction was inappropriate and was to be limited to prison-specific relief where plaintiffs presented "no evidence whatsoever as to conditions at the bulk of Illinois penal institutions" or "that institutions other than [theirs] are engaged in a continuing violation of constitutional rights" (citing *Green v. Mansour*, 474 U.S. 64 (1985))).

More fundamentally, even if Williams were seeking injunctive relief applicable across the IDOC, he would not have Article III standing to do so. Article III standing is an unwaivable jurisdictional prerequisite for bringing a case in federal court. *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) (citing *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020)). It must be demonstrated for each form of relief that is

sought. *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). And it requires that a plaintiff show three things: (1) that he has suffered a concrete, particularized, and actual or imminent injury (an "injury in fact"); (2) that his injury is "fairly traceable to the challenged action[s]" of the defendant; and (3) that the injury is likely to be redressed by a favorable decision. *Lena*, 364 F.3d at 871 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000)); *Dinerstein*, 73 F.4th at 511 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Here, Williams has not made any allegations or provided any evidence about IDOC's system-wide Ramadan policies or lack thereof. Accordingly, he cannot demonstrate that his injuries during Ramadan 2022 were "fairly traceable" to (i.e., caused by) the challenged actions of the IDOC (rather than to the actions of particular Pinckneyville officials). Similarly, he cannot show how an IDOC-wide injunction would be likely to redress an injury that, according to the allegations and the record, appears to have been caused by Pinckneyville officials themselves. He thus would be unable to establish standing for a system-wide injunction, and the Court would have no jurisdiction to hear the claim.

In other words, when Williams's injunctive claim is construed as challenging a Pinckneyville-specific condition, the claim is moot. When his claim is construed as challenging a condition stemming from an IDOC-wide policy, he lacks standing. Under either interpretation, the Court cannot hear Williams's request for injunctive relief and must dismiss it for lack of jurisdiction.

The Court next considers Williams's request for declaratory relief. Declaratory judgments typically function very similarly to injunctions, so much so that "[g]enerally, courts do not distinguish between claims for injunctive and declaratory relief when determining whether such claims are moot." *Ruiz v. Heinzl*, No. 06-C-478, 2007 WL 5445537, at *3 (W.D. Wis. July 16, 2007) (citing *Higgason*, 83 F.3d 807). When a plaintiff's claims for injunctive relief become moot, prospective (i.e., forward-looking) declaratory judgments usually become moot, too. *See Nelson*, 570 F.3d at 882–89 (for RLUIPA, which does not permit monetary damages, the mooting of a request for injunctive relief also mooted declaratory relief); *cf. Green*, 474 U.S. at 72–74 (holding declaratory relief unavailable where the Eleventh Amendment barred monetary relief and there was "no claimed continuing violation of federal law, and therefore no occasion to issue an injunction"). If, however, a given legal claim can support either injunctive or monetary relief, the rule is different. *See Crue v. Aiken*, 370 F.3d 668, 677–78 (7th Cir. 2004) ("When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive." (citations omitted)).

Here, Williams brings two challenges concerning the burden imposed on his religious exercise by the delayed meal trays: a § 1983 claim against Arnold in his personal capacity for a violation of the free exercise clause of the First Amendment (Count I), and a RLUIPA claim against Hughes in her official capacity for a violation of the protections of that act (Count II). Under § 1983, Williams can pursue injunctive, declaratory, or monetary relief. *E.g.*, *Williams v. Harrington*, No. 14-cv-00660, 2014 WL 3509455, at *3 (S.D. Ill. July 15, 2014) (citing *Nelson*, 570 F.3d at 882). Under RLUIPA, Williams can only

pursue injunctive or declaratory relief. *Childs v. Webster*, 168 F.4th 1020, 1025 (7th Cir. 2026) (first citing 42 U.S.C. § 2000cc-2(a); and then citing *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022)); *see also Sossamon v. Texas*, 563 U.S. 277, 287 (2011) (holding RLUIPA does not authorize money damages).

Because Williams's § 1983 challenge can support monetary damages, his claim for declaratory relief under § 1983 is not moot. But his RLUIPA challenge does not permit monetary damages; both his injunctive and declaratory claims under RLUIPA are therefore moot. In sum, the Court lacks jurisdiction to consider (1) Williams's § 1983 claim in Count I to the extent that he seeks injunctive relief Williams's claim for injunctive relief, and (2) Williams's RLUIPA claim in its entirety.

### B. Count I

The Court only retains jurisdiction over Williams's § 1983 claim that he is entitled to retrospective relief (i.e., monetary and backward-looking declaratory relief) because Arnold deprived him of his First Amendment rights. To survive summary judgment, Williams at a minimum needed "to make a prima facie case by 'submitting evidence from which a jury could reasonably find that'" Arnold (1) personally and (2) unjustifiably (3) placed a substantial burden on his religious practices. *Childs*, 168 F.4th at 1032 (cleaned up) (quoting *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019)). If Defendants can show that Williams failed to carry his burden in establishing a genuine dispute of material fact as to any one of these three elements, summary judgment is warranted as to what remains of Count I.

Although Defendants contest each element, the matter can be resolved solely on the question of personal involvement. To be liable under § 1983, a defendant sued in their individual capacity "must have caused or participated in a constitutional deprivation." *Crawford v. Burkhartzmeyer*, No. 22-cv-530, 2025 WL 522554, at *4 (S.D. Ill. Feb. 18, 2025) (quoting *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)). Arnold's liability, if any, depends on his own "knowledge and actions, not on the knowledge or actions" of others, even "persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Defendants argue Arnold was not sufficiently personally involved with the delivery of the meal trays to be held liable under § 1983. (Doc. 26, at 6–8). To support this argument, Defendants proffer facts—undisputed by Williams and uncontradicted in the record before the Court—that Arnold was not involved in the preparation or distribution of the Ramadan trays, as those tasks were under the purview of dietary staff and cell house staff. (Doc. 26, ¶¶ 13–14; Doc. 26-3, ¶ 7). In fact, in Williams's own deposition testimony, he recounted that he asked Arnold about the late-arriving trays; in response, Arnold told him he would have to speak to dietary staff about that issue. (Doc. 26-1, at 9–10).

The Court agrees with Defendants. The time the trays arrived at Williams's cell house depended on dietary staff. The time the trays were distributed to Williams's cell depended on cell house staff. In other words, Arnold was uninvolved in the harm Williams claims to have suffered.[9] He therefore cannot be held liable under § 1983. *Cf.*

---

[9] As mentioned, Williams did not file a response to the motion for summary judgment. However, in independently reviewing the record, the Court was unable to find any evidence establishing a dispute of

*Crawford*, 2025 WL 522554, at *4 (with respect to free exercise deprivation allegation caused by medication delivery timing, prison psychiatrist was not personally involved in administering that medication and thus was not liable). Defendants are "'entitled to a judgment as a matter of law' because [Williams] has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

**CONCLUSION**

For these reasons, the Court **GRANTS** the motion for summary judgment filed by Defendants Latoya Hughes and Richard Arnold. (Doc. 26). Plaintiff Jessie Williams's claim against Arnold under § 1983 is **DISMISSED as moot** to the extent it seeks injunctive relief and **DISMISSED with prejudice** to the extent it seeks monetary and declaratory relief. His claim against Hughes for injunctive and declaratory relief under RLUIPA is **DISMISSED as moot**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**NOTICE**

If Williams wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

---

material fact as to Arnold's role in the timing of tray delivery during Ramadan 2022. Even the allegations in Williams's complaint suggest only that Arnold is liable because he is "legally responsible for all religious activities at [Pinckneyville]." (Doc. 2, ¶ 7). While an allegation of personal involvement would of course be insufficient to establish a dispute of material fact, *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 135 (7th Cir. 2011) (citations omitted), the Court finds it probative that the allegations themselves do not appear to establish all the necessary elements of Williams's claim.

If Williams chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Williams files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Williams wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-

day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Williams showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Williams opts to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Williams cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Williams plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  June 11, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**